UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICIA M. JONES,

    Plaintiff,

vs.                                             Case No. 3:04-cv-881-J-MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed previous applications for disability benefits on May 30, 1996, June 19, 1997 and January 28, 2000, which were denied initially without further appeal. (Tr. 14). Plaintiff's current application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") was filed on January 17, 2001, alleging an inability to work since November 1, 1999 due to hemiplegia, carpal tunnel syndrome, chronic fatigue syndrome, depression, interstitial cystitis, pelvic floor dysfunction,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 5).

bladder obstruction, and high blood pressure.  (Tr. 5, 44-46, 54)  The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 27-30).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on April 10, 2003.  (Tr. 619-648).  On August 19, 2003, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 14-25).  Plaintiff filed a Request for Review by the Appeals Council, which was denied on July 13, 2004, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 6-8).  Plaintiff timely filed her Complaint in the U.S. District Court on September 13, 2004.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since November 1, 1999 due to hemiplegia, carpal tunnel syndrome, chronic fatigue syndrome, depression, interstitial cystitis, pelvic floor dysfunction, bladder obstruction, and high blood pressure.  (Tr. 54).  Plaintiff was thirty-seven years of age on the date the ALJ's decision was issued.  (Tr. 44).  She completed high school and vocational training as a cosmetologist.  (Tr. 623).  Plaintiff has past relevant work experience as a telemarketer, hospital insurance clerk, salesperson, leasing agent and insurance customer service clerk.  (Tr. 641).

### B.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

   In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits up through the date of the decision.  (Tr. 15, 24).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, November 1, 1999.  (Tr. 16, 24).  At step two, the ALJ determined that Plaintiff had interstitial cystitis ("IC"), status post carpal tunnel syndrome, affective disorder, degenerative disc disease, headaches, chronic fatigue syndrome, and bursitis, "impairments that are severe within the meaning of the Regulations."  (Tr. 20, 24).  Further, the ALJ determined Plaintiff did not have an

impairment or combination of impairments, that met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  Id.

The ALJ held Plaintiff retained the residual functional capacity to perform sedentary work activities that did not require climbing ladders, work around machinery, crawling, stooping, or bending.  (Tr. 22, 24).  The ALJ also determined that Plaintiff needed one bathroom break per hour as well as "the opportunity to periodically alternate sitting with standing."  Id.  In making this determination, the ALJ found Plaintiff's testimony regarding her pain and ability to work not entirely credible.  Id.  At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any of her past relevant work.  (Tr. 640-47).  The VE testified Plaintiff could perform her past relevant work as a telemarketer clerk as performed by Plaintiff.  (Tr. 642).  The ALJ went on to determine whether there existed any jobs in the national economy which Plaintiff could perform considering her age, education, past relevant work experience and residual functional capacity.  The VE testified that Plaintiff could perform the jobs of surveillance system monitor, food and beverage order clerk and addresser.  (Tr. 643).  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 23, 24).

### III.     STANDARDS OF LAW

#### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV. ANALYSIS

Although not entirely clear, Plaintiff's primary argument on appeal appears to be that the ALJ's credibility determination regarding Plaintiff's allegations of pain and her subjective symptoms is not supported by substantial evidence.  (Doc. 13).  The Commissioner responds that the ALJ's opinion is indeed supported by substantial

evidence and that he conducted the appropriate analysis in discounting Plaintiff's credibility.  (Doc. 18).

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability.  Foote, 67 F.3d at 1561.  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ did not specifically reference the Eleventh Circuit pain standard, however, it appears he conducted the correct analysis for pain and subjective

complaints. Specifically, the ALJ found that the medical evidence established "the existence of a medically determinable impairment that is capable of producing pain." (Tr. 21). As such, the ALJ was required to consider Plaintiff's subjective complaints of pain and other symptoms. The ALJ did so and determined the medical evidence confirmed that Plaintiff's "bladder disease [was] a disease of exacerbations" and that the record "support[ed] a finding that her pain complaints secondary to her multiple musculoskeletal impairments [were] disproportionate to the clinical findings." (Tr. 21).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p. A reviewing court

will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ provided specific reasons for his determination regarding Plaintiff's credibility.  The ALJ noted that Plaintiff's treatment was complicated by the "episodic formation of kidney stones, but it appears a change in her diet and/or medications have served to control the problem." (Tr. 21).  Additionally, the ALJ stated the record shows Plaintiff has "experienced periods when her pain and symptoms were minimal or in remission."  Id.

The ALJ mainly based his findings on his opinion that the level of Plaintiff's complaints was not supported by medical evidence in the record.  Specifically, the ALJ noted that numerous diagnostic studies were performed on Plaintiff and that, with the exception of studies of her cervical spine (which showed moderate degenerative changes), the studies showed no abnormalities to explain Plaintiff's musculoskeletal pain.  Id.  In addition, the ALJ stated that "[e]xaminations conducted in response to various musculoskeletal pain complaints failed to show diminished range of motion, muscle spasm, muscle atrophy, motor or sensory deficits, pathologic reflexes, joint deformity or other objective findings consistent with persistent, intense pain."  Id.  The ALJ also noted that "[p]ost-operative examinations of her upper extremities were negative for objective signs of nerve compression, and there is no evidence that her carpal tunnel syndrome was not corrected by surgery."  Id.  Further, the ALJ explained that even Plaintiff's "complaints of swelling were not clinically verified" and that Plaintiff "was treated conservatively with medications, and with some complaints, she was not

offered treatment at all." Id.  The ALJ noted that Plaintiff was recently diagnosed with fibromyalgia and has complained of fatigue, however, stated that "the record does not describe specific treatment [for these conditions] such as trigger point injections or physical therapy." Id.  Additionally, the ALJ noted that Plaintiff's pain complaints were inconsistent with the level of activities Plaintiff reported, such as managing her household and caring for her two children.  Id.

Plaintiff attacks several of the ALJ's findings in making his credibility assessment. Specifically, Plaintiff attacks the ALJ's statement that her IC had been in remission and his failure to consider the side effects of the medication she was taking for her IC symptoms.  (Doc. 13, pp. 11-13).  In her brief, Plaintiff claims that during the hearing, she testified that she stopped taking Singular and Morphine SR because Shands would not allow her to continue taking narcotics because they did not want the liability.  (Tr. 626).  Additionally, she claimed that the she ceased taking these medications because of the side effects, severe headaches and nausea.  Id.  However, it is not clear in the transcript whether Plaintiff is referring to side effects from Singular or the morphine she was also taking.  Id.  Additionally, medical records from Dr. Goldwasser at Shands indicate that Plaintiff's IC symptoms were completely resolved while she was taking Singular but that they returned in approximately September 2002.  (Tr. 609, 611).  On March 6, 2003, Plaintiff told Dr. Goldwasser that while she was taking Singular, her symptoms returned so she stopped taking Singular.  (Tr. 609).  There is no mention of any side effects such as headaches and/or nausea.  Indeed, Plaintiff informed Dr. Goldwasser that she wanted to restart taking Singular.  Id.  Additionally, on January 22,

2003, Plaintiff reported that the Morphine SR and Neurontin she was taking were significantly alleviating her pain such that it had decreased to a 3 out of 10. (Tr. 611). Accordingly, the undersigned finds the statement by the ALJ that Plaintiff "experienced periods when her pain and symptoms were minimal or in remission" (Tr. 21) is supported by substantial evidence.[2]

Plaintiff's claims that the ALJ failed to consider the side effects of her medication as required by SSR 96-7p in making his credibility assessment fails for additional reasons. (Doc. 13, p13). As noted above, the side effects of medications is one of the factors set forth in the regulations that the ALJ should consider in making his credibility determination. However, in the Eleventh Circuit, there is no requirement that all seven of the factors be discussed in detail by the ALJ. French v. Massanari, 152 F.Supp.2d 1329, 1338, n.6 (M.D. Fla. 2001) (holding that "it is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination"); Bechtold v. Massanari, 152 F.Supp.2d 1340, 1349, n.9 (M.D. Fla. 2001), aff'd, 31 Fed.Appx. 202 (11th Cir. 2001). In any event, the ALJ did specifically address several of the side effects of Plaintiff's medications, fatigue and headaches. (Tr. 22). Again, he provided specific reasons for discounting Plaintiff's allegations regarding these side effects. Id.

---

[2] Plaintiff also takes the position that the ALJ failed to comply with Social Security Ruling ("SSR") 02-2p regarding interstitial cystitis. However, the ALJ clearly found Plaintiff suffered from IC and that it was a severe impairment. The undersigned believes the ALJ appropriately evaluated Plaintiff's IC in light of SSR 02-2p and simply found that the medical evidence in the record did not support Plaintiff's claims regarding the severity of her symptoms.

-10-

Plaintiff also claims the ALJ's statement that "there is no evidence that [Plaintiff's] carpal tunnel syndrome was not corrected by surgery," is not supported by substantial evidence. To support this contention, Plaintiff points to the consultative report of Dr. Harry F. Yoffee, M.D., who examined Plaintiff in January 2000 and noted that "[a]t the present time [Plaintiff's] main problems appear to be recurrence of her carpal tunnel syndrome as well as severe depression and chronic anxiety." (Tr. 214). Dr. Yoffee did not diagnose Plaintiff but rather simply stated that based on her complaints, Plaintiff needed "further neurological and psychiatric evaluation." Id. On February 21, 2000, Plaintiff saw Dr. Scales, a neurologist, who recommended a nerve conduction/EMG study of both upper extremities "to rule out the possibility of nerve entrapment recurrent at the wrists or somewhere along the elbows or thoracic outlet region." (Tr. 230). On April 13, 2000, Dr. Scales reviewed the results of the nerve conduction/EMG study with Plaintiff. He explained to Plaintiff that the results suggested "simple chronic changes compatible with her prior carpal tunnel surgery but there were no acute changes." (Tr. 226). On May 4, 2001, Plaintiff underwent a consultative examination with Dr. Hung Tran, M.D. of the Office of Disability Determinations. During the examination, Plaintiff reported pain in her wrists but noted that after her operation, it was better. (Tr. 396). When examining Plaintiff's arms, Dr. Tran noted that Plaintiff was experiencing pain but had "no LOM on wrists," "no numbness on fingers," her grip was normal bilaterally, and she had "[n]o impairment of gross [or] fine movements." (Tr. 398). Plaintiff was unable to lift 20 pounds with both hands because she claimed it was too heavy. Id. All in all,

the Court finds the ALJ's statement regarding Plaintiff's carpal tunnel syndrome to be supported by substantial evidence.

Plaintiff also argues that the ALJ erred by discounting her complaints of disabling depression. The ALJ's decision noted that there was a mental component to Plaintiff's claim of disability involving depression. (Tr. 21). In finding that Plaintiff's depression did not preclude her from being able to work, the ALJ stated:

> The evidence of record indicates that the claimant's mental problems were situational and appeared to flare up when she became stressed over financial problems and family conflict. She has reported memory problems, but IQ testing and her ability to provide detailed descriptions of her medical history do not support this. There is no evidence to show that she was ever delusional or antisocial. Her activities of daily living confirm that she is capable of performing household chores and independently caring for grooming and hygiene. With regard to social interaction and effective communication, she organized a support group, attends church, and visits with her sister on a regular basis. The record does not contain observations of deficiencies in concentration and attention. According to her testimony, she reads, watches television, and uses the computer, and she does not report inability to follow the programs or comprehend what she is reading. The evidence of record also demonstrates that she has experienced good response to medications with improved ability to adapt to stressful circumstances.

(Tr. 21-22). Plaintiff takes issue with the ALJ's statement that her "mental problems were situational" and claims that such a statement is inconsistent with the report of Ernest R. Larsen, Ph.D. (Tr. 21, Doc. 13, pp. 9-10). The Commissioner acknowledges that the Plaintiff's mental problems were not entirely situational, however, argues the ALJ's statement was "nevertheless consistent with consultative psychologist Dr. Ernest Larsen's report that Plaintiff experienced her [c]urrent situation as having a very, very

high level of stress due to problems with finances, her children and her former husband." (Doc. 18, p.9; Tr. 219, 224).

Although the Court agrees that Plaintiff's mental problems were not entirely situational, the ALJ's statement was not that her problems were **entirely** situational but rather that they appeared to flare up when she became stressed. The record supports this assertion. Indeed, Dr. Larsen's report noted that Plaintiff was currently not depressed. (Tr. 223). It further stated that she had been significantly depressed in the past "in connection with some marital problems in her second marriage." Id. Additionally, in January 2000, Plaintiff was admitted to Orange Park Medical Center for a psychiatric evaluation during which Plaintiff's symptoms were described as a "vague, poorly defined pseudoneurologic impairment" with "severe decompensation associated with multiple severe stressors." (Tr. 202). In any event, the ALJ's statement regarding Plaintiff's problems being situational was only one of the several reasons the ALJ gave for discounting Plaintiff's complaints of disabling depression. Plaintiff did not question any of the other reasons and they appear to be supported by substantial evidence. Therefore, the Court finds no error with the ALJ's decision regarding Plaintiff's mental problems.

Finally, Plaintiff argues the hypothetical presented to the VE was incomplete because it failed to address "the frequency of [Plaintiff's] urological urgency," "the impact of pain and prescription side effects on her capacity to concentrate," "the need to change positions between sitting, standing and laying down," Plaintiff's "symptomatic fatigue" or her carpal tunnel impairment. (Doc. 13, p.14). The ALJ properly discounted

Plaintiff's credibility with respect to her allegations of pain, her ability to concentrate, her need to lie down, her fatigue and her carpal tunnel syndrome symptoms.  As such, there was no error in the ALJ's failure to include those claims in the hypothetical posed to the VE.  With respect to the frequency of Plaintiff's urological urgency, the ALJ included the need to use the restroom once every hour in the hypothetical.  (Tr. 642).  At the hearing, Plaintiff testified that she needed to use the restroom once every half an hour to an hour.  (Tr. 633).  Accordingly, the Court finds no error in the hypothetical posed to the VE.

In sum, the ALJ discussed Plaintiff's subjective complaints of pain and her testimony regarding subjective symptoms and found that the medical evidence did not substantiate the severity of her complaints.  As required, he articulated several reasons for discounting Plaintiff's complaints and despite Plaintiff's arguments to the contrary, these reasons appear to be supported by substantial evidence.  Accordingly, the ALJ's decision to discredit Plaintiff's testimony regarding her subjective complaints of pain and symptoms is consistent with the law and supported by substantial evidence.

**V.    CONCLUSION**

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four, 42 U.S.C. 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  21st  day of September, 2005.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record